**Betty PHELPS and Delbert Phelps, Plaintiffs,**

v.

**WYETH, INC.; Schwarz Pharma, Inc.; Pliva USA, Inc.; Northstar RX LLC; and Alaven Pharmaceutical, Defendants.**

Civ. No. 6:09–cv–06168–TC.

United States District Court, D. Oregon.

April 24, 2012.

Daniel J. McGlynn, McGlynn Glisson & Mouton, LLP, Terrence Joseph Donahue, Jr., McGlynn, Glisson & Mouton, Baton Rogue, LA, Leslie W. O'Leary, Michael L. Williams, Thomas B. Powers, Steven B. Seal, Williams, Love, O'Leary & Powers, PC, Portland, OR, William B. Curtis, Curtis Law Group, Dallas, TX, Tiffany Reece Clark, Ulmer & Berne, LLP, Cincinnati, OH, for Plaintiffs.

Joseph P. Thomas, Tiffany Reece Clark, Ulmer & Berne, LLP, Cincinnati, OH, Rex A. Littrell, Ulmer & Berne, LLP, Columbus, OH, Susan E. Watts, Kennedy, Watts, Arellano & Ricks, LLP, Vicki M. Smith, Molly Jo Mullen, Bodyfelt, Mount, Stroup & Chamberlain, LLP, Portland, OR, Andrew H. Myers, Habib Nasrullah, Michael L. O'Donnell, Wheeler, Trigg, O'Donnell, LLP, Denver, CO, for Defendants.

## OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiffs bring this action alleging that Betty Phelps was injured after ingesting generic metoclopramide produced by defendants Pliva USA, Inc. (Pliva) and Northstar Rx LLC (Northstar) ("generic defendants"). Plaintiffs also allege that Wyeth, Inc. (Wyeth), Schwarz Pharma, Inc. (Schwarz), and Alaven Pharmaceutical (Alaven), manufacturers of the name-brand version of metoclopramide ("name-brand defendants"), are liable for their injuries.

In June 2010, the court granted summary judgment in favor of the name-brand defendants Wyeth, Schwarz, and Alaven and dismissed all claims against them. On September 19, 2011, plaintiffs filed a motion for a relief from that ruling, which the name-brand defendants opposed. Following the Supreme Court's ruling in *PLIVA, Inc. et al. v. Mensing,* —— U.S. ——, 131 S.Ct. 2567, 180 L.Ed.2d 580 (2011), the parties filed supplemental motions. Northstar filed a motion for summary judgment, Pliva filed a motion to dismiss, and plaintiffs filed a motion for partial summary judgment. Following oral argu-

ments on September 15, 2011, plaintiffs were given leave to file a motion to file an amended complaint. On November 22, 2011, Judge Coffin granted plaintiffs' motion to file an amended complaint, and plaintiffs filed their first amended complaint adding a claim against Pliva for failure to update its generic warning label to match the name-brand counterpart's label.

On November 23, 2011, Magistrate Judge Coffin recommended that the court deny plaintiffs' motion for a relief from judgment. Judge Coffin also recommended that the court grant Northstar's motion for summary judgment and Pliva's motion to dismiss based on federal preemption. Further, Judge Coffin recommended that the court deny plaintiffs' motion for partial summary judgment. Plaintiffs timely filed objections to Judge Coffin's findings. Additionally, defendant Pliva objects to plaintiffs' amended claims as preempted and argue that the issue is not properly before the court at this time.

Subsequently, plaintiffs filed a motion requesting sanctions for Pliva's failure to produce copies of the labeling that accompanied its metoclopramide products between 2003 and 2008 during discovery. Plaintiffs argue that Pliva's failure to disclose the fact that its label differed from the name-brand's label deprived both plaintiffs and the court of necessary information. Consequently, plaintiffs assert that sanctions are required under Federal Rule of Civil Procedure 26 and should be awarded under Federal Rule of Civil Procedure 37. Judge Coffin issued a second Findings and Recommendations and declined to impose sanctions, and plaintiffs object.

When a party objects to a magistrate judge's findings and recommendations regarding a dispositive issue, the district court must make a de novo determination of that portion of the magistrate judge's report. Fed.R.Civ.P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1)(c); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.*, 656 F.2d 1309, 1313 (9th Cir.1981). For non-dispositive motions, the magistrate's finding are reviewed for clear 72(a); *Henry v. Gill Indust., Inc.*, 983 F.2d 943, 946 (9th Cir.1993). Plaintiffs filed timely objections to both of Judge Coffin's findings and recommendations, and defendants timely objected to a portion of Judge Coffin's findings regarding preemption. I give *de novo* review of the parties' objections to the findings and recommendations regarding the motions for relief from judgment, to dismiss, and summary judgment and review for clear error plaintiffs' objection to the denial of their motion for sanctions.

### I. Background

The following facts are undisputed. Metoclopramide is a prescription drug that is available in either generic or name-brand formulation. Reglan, the name-brand product, was produced at different times by Wyeth, Schwarz, and Alaven. Pliva and Northstar produce the generic formulation of the medication.

Mrs. Phelps took generic metoclopramide tablets from November 2002 through at least August 2009 as prescribed by her physician. She alleges the metoclopramide caused her to develop tardive dyskinesia, a debilitating neurological condition characterized by involuntary movements. Plaintiffs allege that the defendants are liable for her injuries because they negligently failed to warn her or her doctors about the risks associated with the long-term use of metoclopramide.

### II. Discussion

### A. Claims Against Name–Brand Defendants are Dismissed.

Plaintiffs seek relief from judgment with respect to dismissal of their claims against

the name-brand defendants on the grounds that *Mensing* overturned the established law. Federal Rule of Civil Procedure 60(b) sets forth the grounds upon which such a motion may be granted. Rule 60(b)(5) permits a party to obtain relief if "the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed.R.Civ.P. 60(b)(5). Such motions are infrequently granted. *Twentieth Century–Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir.1981). Here, plaintiffs argue reconsideration of the grant of summary judgment for name-brand defendants is warranted due to the Supreme Court's decision in *Mensing*. Plaintiffs claim that *Mensing* overturns the law established in *Foster v. American Home Products Corp.*, 29 F.3d 165 (4th Cir.1994), a case on which Magistrate Judge Coffin relied. In *Foster*, the Fourth Circuit found that the manufacturer of a name-brand prescription drug could not be held liable for an injury caused by the generic version of the drug.

Plaintiffs make two principle objections to Judge Coffin's findings. First, plaintiffs assert that *Mensing* overturned *Foster*, and thus the court's reliance on *Foster* is misplaced. Instead, plaintiffs urge the court to follow *Conte v. Wyeth, Inc.*, 168 Cal.App.4th 89, 85 Cal.Rptr.3d 299 (2008) and *Kellogg v. Wyeth*, 762 F.Supp.2d 694 (D.Vt.2010). Second, plaintiffs argue that their claims are not solely based on product liability, but also sound in negligence and innovator's liability.

The name-brand defendants respond that summary judgment was granted based on the principle of Oregon law that a manufacturer cannot be held liable unless a plaintiff proves that her injuries resulted from the use of that manufacturer's product, and that Mrs. Phelps ingested only generic metoclopramide. Further, defendants claim that there were no federal-law issues relevant to the court's decision to grant their motion for summary judgment Finally, defendants assert that *Mensing* does not overturn *Foster's* holding concerning the liability of name-brand manufacturers.

Plaintiffs argue that the recent *Mensing* decision overturned the ruling in *Foster;* and consequently, the court improperly relied on *Foster*. In *Foster*, the Fourth Circuit found that name-brand manufacturers could not be held liable for injuries caused by generic formulations of a drug and that a generic manufacturer could add to or strengthen warnings or delete misleading statements on labels. 29 F.3d at 170. In *Mensing*, the Supreme Court held that a generic manufacturer could not change the content of label warnings, even to add additional warnings. 131 S.Ct. at 2575. Thus, while *Mensing* overrules *Foster* with respect to a generic manufacturer's ability to alter labels, it does not overrule *Foster's* holding regarding the liability of name-brand manufacturers. Indeed, the *Foster* court's reluctance to hold name-brand defendants liable for generic drugs did not depend on a generic manufacturer's ability to alter the label, but rather on concepts of foreseeability and duty. Consequently, *Mensing* does not overturn the central holding in *Foster*.

In fact, the Supreme Court acknowledged that the dual holdings of *Foster* and *Mensing* left the plaintiff there with no remedy, as she could not successfully bring a claim against name-brand manufacturers under *Foster* and was barred on other grounds from suing the generic manufacturers. *Mensing*, 131 S.Ct. at 2581 (acknowledging "the unfortunate hand that federal drug regulation has dealt" plaintiff). The majority further stated that Congress or the FDA could change the law if they wished to provide plaintiffs who had

ingested generic medication with a persuasive authority to bar plaintiffs' claims against name-brand defendants here.

Additionally, plaintiffs argue that *Foster* rests on legally unsound propositions and urge the court to reject its holding. First, plaintiffs argue that *Foster* proposes that it is illogical for a physician to rely on product information provided by a name-brand manufacturer when prescribing a generic. Pl.'s Objections at 14. However, the *Foster* court's decision rests on its determination of the duty of a name-brand manufacturer, not the proposition that a physician should not rely on information provided by the name-brand manufacturer. Second, plaintiffs argue that name-brand manufacturers owe a general duty of care to patients ingesting generic formulations of the drug and that *Foster* ignored this duty. However, I decline to extend a name-brand manufacturer's duty so far, as discussed below.

■ It is undisputed that Mrs. Phelps never ingested metoclopramide manufactured by any of the name-brand defendants. Nor did any of the name-brand defendants supply her with metoclopramide. Under Oregon's product liability law, the name-brand defendants cannot be found liable for plaintiffs' injuries because plaintiffs cannot show that their injuries resulted from the use of the name-brand manufacturers' product. *See McEwen v. Ortho Pharma. Corp.*, 270 Or. 375, 407, 528 P.2d 522 (1974). Nonetheless, plaintiffs request that the court apply common law principles of negligence, fraud, and misrepresentation to extend liability to the name-brand defendants. They argue that regardless of whether Mrs. Phelps ingested the name-brand defendants' product, the name-brand defendants owed her a duty of care.

Plaintiffs assert that a name-brand manufacturer may be held liable for injuries suffered by a patient who takes either the generic or name-brand formulation of a drug, if the injuries were foreseeably caused by negligent or intentional misrepresentations by the pharmaceutical company that induced the purchase and consumption of the drug.

■ Plaintiffs cite neither Oregon nor federal law to support this proposition. Instead, plaintiffs argue that manufacturers owe a general duty to use care in connection with their conduct to all who may injured by it, if such conduct is carried out in a negligent manner and results in foreseeable injuries. Pl.'s Objections at 6–7 (citing *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928)). Plaintiffs assert that, based on federal regulations, name-brand defendants should have known that all generic manufacturers were required to duplicate the information on name-brand labels for generic drugs, and that generic manufacturers were prevented from including additional warnings or independently warning doctors of metoclopramide's risks. Additionally, plaintiffs argue that name-brand defendants knew or should have know that their label did not adequately warn of the risks associated with metoclopramide. Consequently, plaintiffs assert that the generics defendants' reliance on name-brand defendants' labels was a foreseeable cause of their injuries.

I decline to stretch the duty of care for name-brand defendants to cover injuries caused by generic manufacturers' products, given that their argument directly contradicts Oregon law. *McEwen*, 270 Or. at 407, 528 P.2d 522 ("(W)e must determine whether each defendant's negligence could be found to be a substantial cause of plaintiff's ingestion of the (drug) *manufactured by that defendant.*") (emphasis added). Further, like Judge Coffin, I find the reasoning in *Foster* persuasive. There, the plaintiffs' infant daughter died after

being treated with generic Phenergan. *Foster*, 29 F.3d at 167. The plaintiffs brought suit against the name-brand manufacturer for negligent misrepresentation, but the Fourth Circuit ruled that Maryland law did not allow a manufacturer to be liable for an injury caused by a competitor's product. *Id.* at 171. While *Foster* recognized that reliance on the label was foreseeable, the court explained that foreseeability alone does not create a duty of care, and the court specifically rejected the plaintiffs' negligence claim. *Id.* (stating that "we think to impose a duty in the circumstances of this case would be to stretch the concept of foreseeability too far"). The *Foster* court found that there is "(n)o legal precedent for using a name brand manufacturer's statements about its own product as a basis for liability or injuries caused by other manufacturers' products, over whose production the name brand manufacturer had no control." *Id.* at 170. Name-brand defendants cite a plethora of courts which have followed *Foster* and concluded that name-brand defendants cannot be held liable for injuries caused by products produced by a generic manufacturer. *See e.g. Smith v. Wyeth, Inc.*, 657 F.3d 420, 424 (6th Cir.2011); *Metz v. Wyeth LLC*, 830 F.Supp.2d 1291 (M.D.Fl. 2011). I agree.

Next, plaintiffs encourage the court to reject *Foster* and follow the holdings in *Conte* and *Kellogg*. In both *Conte and Kellogg*, the courts analyzed the plaintiffs' labeling misrepresentation claims as negligence claims. The *Conte* court found precedent for extending liability to someone other than the manufacturer, based on a California case extending liability to a company which had endorsed another's product. 168 Cal.App.4th 89, 85 Cal. Rptr.3d 299, 311 (2008). In *Kellogg*, the court concluded that Vermont's negligence law created a legally cognizable duty for name-brand manufacturers. 762 F.Supp.2d at 706. In contrast, Oregon courts have found that ORS § 30.900 includes all theories a plaintiff may bring in an action based on a product defect. *See Marinelli v. Ford Motor Co.*, 72 Or.App. 268, 273, 696 P.2d 1, *rev. den.*, 299 Or. 251, 701 P.2d 784 (1985). Consequently, Oregon product liability law is controlling here, and it does not allow for name-brand manufacturer liability unless Mrs. Phelps can demonstrate that the name-brand manufacturers' products caused her injury. *See McEwen*, 270 Or. at 407, 528 P.2d 522.

Finally, plaintiffs assert that name-brand defendants are liable as the innovators of metoclopramide. Plaintiffs rely heavily on the reasoning in *Easter v. Aventis Pasteur, Inc.*, 2004 WL 3104610 (E.D.Tex.2004). In *Easter*, the court held Eli Lilly, the name-brand manufacturer of thimerosal, liable for injuries caused by a generic formulation because Eli Lilly published distorted medical literature and deceived health regulators and physicians as to the safety of the medication. *Id.* at *8. Plaintiffs, however, fail to make such allegations in this case. In 2010, a district court granted summary judgment to name-brand defendants, on claims including innovator liability, in a metoclopramide case on the basis that the plaintiff only ingested the generic manufacturer's products. *Finnicum v. Wyeth, Inc.*, 708 F.Supp.2d 616, 616 (E.D.Tex.2010). The *Finnicum* court distinguished *Easter* because Lilly designed the vaccine with which the plaintiff was injected. *Id.* at 621. In contrast, the plaintiff in *Finnicum* never ingested a name-brand formulation of metoclopramide nor did the name-brand defendant design the generic formulation. *Id.* Consequently, the court declined to extend liability to name-brand defendants. *Id.* I find the *Finnicum* court's reasoning persuasive.

In sum, while name-brand defendants are required to provide adequate warn-

ings, they cannot be held liable for injuries caused by a generic manufacturer's products. Plaintiffs' motion for relief from judgment is denied.

## B. Plaintiffs' Claims Against Generic Manufacturers are Preempted.

Relying on *Mensing,* Judge Coffin found that federal law preempts state laws that would impose a duty on generic manufacturers to change a drug's label and granted Pliva's motion to dismiss, though Judge Coffin did not dismiss plaintiffs' newly-amended claims. Judge Coffin also denied plaintiffs' motion for partial summary judgment. Plaintiffs object to Judge Coffin's finding of preemption, and defendant Pliva objects to Judge Coffin's denial of the motion to dismiss with respect to plaintiffs' amended failure-to-update claims. Alternatively, Pliva argues the matter should be handled under a new motion for summary judgment.[1]

Federal Rule of Civil Procedure 56 allows summary judgment if the pleadings, discovery and disclosure motions on file, and any affidavits demonstrate that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). Put simply, there can be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant has the initial burden and must establish that there is no genuine issue of material fact or that a material fact essential for the nonmovant's claim is missing. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has met its burden, the burden shifts to the nonmovant to produce specific evidence that a genuine

issue of material fact exists or to establish the existence of all facts material to the claim. *Id.* The nonmovant needs more evidence than the mere allegations or denials contained in its own pleadings. *See* Fed.R.Civ.P. 56(c)(1).

■ Additionally, summary judgment is appropriate when federal law preempts a plaintiff's state law claims. *See e.g., Bank of Am. v. City & Cnty. of San Francisco,* 309 F.3d 551, 566 (9th Cir.2002) (affirming the district court's grant of summary judgment based on federal conflict preemption). Likewise, when federal law preempts all claims in a complaint, dismissal for failure to state a claim is appropriate. *See e.g., Whistler Invs., Inc. v. Depository Trust & Clearing Corp.,* 539 F.3d 1159, 1163 (9th Cir.2008) (affirming the dismissal of a claim based on federal conflict preemption).

■ While preemption of all claims warrants summary judgment or dismissal, impossibility preemption is a demanding defense. *Wyeth v. Levine,* 555 U.S. 555, 573, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009). The party asserting the defense carries the burden of establishing preemption and, in order to prevail, must convince the court that Congress intended to preempt the claims at issue. *Id.; Barnes ex rel. Est. of Barnes v. Koppers, Inc.,* 534 F.3d 357, 363 (5th Cir.2008) (citing *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)). Judge Coffin found that defendants satisfied this burden. Plaintiffs timely filed objections to his findings.

First, plaintiffs again argue that not all of their claims are based in product liability, and therefore, not all of their claims are

---

1. Judge Coffin also granted defendant Northstar's motion for summary judgment because Mrs. Phelps ingested only Northstar's product after developing tardive dyskinesia. There

are no objections to the recommendation with respect to Northstar; consequently, I adopt Judge Coffin's findings granting summary judgment to Northstar here.

preempted. Second, plaintiffs assert that *Mensing* did not hold that all warnings-based claims are preempted and that defendants failed to satisfy the demanding standard to demonstrate preemption. Third, plaintiffs state that defendants failed to comply with duties imposed by federal law and that plaintiffs may bring action for those violations.

### 1. All of plaintiffs' claims are product liability claims.

As they argued with the name-brand defendants, plaintiffs assert that not all of their claims can be distilled down to product liability claims. While Judge Coffin noted that plaintiffs brought a variety of claims, he ruled that all of the claims could be classified as product liability claims, including failure to warn, under Oregon's product liability statute. The product liability statute provides that:

(A) 'product liability civil action' means a civil action brought against a injury ... arising out of: (1) Any design, inspection, testing, manufacturing or other defect in a product; (2) Any failure to warn regarding a product; or (3) Any failure to properly instruct in the use of a product.

ORS § 30.900. All of plaintiffs' claims fall under the plain language of this definition. Regardless of label, all of plaintiffs' claims are premised on defendants failure to warn plaintiffs or Mrs. Phelps's doctors. Consequently, they are properly considered under ORS § 30.900.

Nonetheless, according to plaintiffs, their breach of warranty claims should be considered as both product liability and contract claims. *See Redfield v. Mead, Johnson & Co.,* 266 Or. 273, 512 P.2d 776, 781 (1973) (finding that the UCC's statute of limitations was applicable when the tort statute of limitations had expired); *Markle v. Mulholland's, Inc.,* 265 Or. 259, 509 P.2d 529, 535 (1973). However, both cases cited

by plaintiffs were decided before ORS § 30.900 was passed in 1977. Since then, Oregon courts have ruled that the statute "embraces *all* theories a plaintiff can adduce in an action based on a product defect," including breaches of warranty. *Marinelli* 72 Or.App. at 273, 696 P.2d 1, *rev. den.,* 299 Or. 251, 701 P.2d 784 (1985) (emphasis in original); *Kambury v. DaimlerChrysler Corp.,* 185 Or.App. 635, 639, 60 P.3d 1103 (Or.App.2003); *Simonsen v. Ford Motor Co.,* 196 Or.App. 460, 466–67, 102 P.3d 710 (Or.App.2004); *Crosswhite v. Jumpking, Inc.,* 411 F.Supp.2d 1228, 1230–31 (D.Or.2006). Under the statute, all of plaintiffs' claims are properly considered product liability claims.

### 2. Mensing preempts all warnings based claims against generic manufacturers.

Plaintiffs next argue that *Mensing* does not preempt all of their claims against generic manufacturers. Judge Coffin found that defendants could not comply with the duty to warn plaintiff alleges under Oregon law and the federal labeling rules. Following the analysis in *Mensing,* Judge Coffin found that all of plaintiffs' failure to warn claims, aside from their amended claim alleging a failure to update the label, were preempted.

The Supremacy Clause establishes that federal law is "the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2. Consequently, "(w)here state and federal law directly conflict, state law must give way." *Mensing,* 131 S.Ct. at 2570. A conflict of laws exists where it is "impossible for a private party to comply with both state and federal requirements." *Id.* (citing *Freightliner Corp. v. Myrick,* 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995)).

■ Detailed federal statutes and regulations govern labeling requirements for prescription medications. The FDA regulates and approves prescription medication labels. *See* 21 C.F.R. § 314.50 (name-brand labeling); 21 C.F.R. § 314.94(a)(8) (generic labeling). A manufacturer seeking federal approval for a new drug must first prove that it is safe, effective, and that the proposed label is both accurate and adequate. Federal Food, Drug, and Cosmetic Act, codified at 21 U.S.C. § 301 et seq. (FDCA). Generic manufacturers face a less rigorous approval process and can gain FDA approval for generic drug formulations by demonstrating bioequivalence to reference-listed drug that is already approved by the FDA. 21 U.S.C. § 355(j)(2)(A). Additionally, a generic drug application must show that "the labeling proposed for the new drug is the same as the labeling approved for the listed drug." 21 U.S.C. § 355(j)(2)(A)(v).[2] Thus, generic drugs manufacturers "have an ongoing federal duty of 'sameness'" regarding their warning labels. *Mensing,* 131 S.Ct. at 2575 (accepting FDA's interpretation that "changes unilaterally made to strengthen a generic drug's warning label would violate the statutes and regulations requiring a generic drug's label to match its brand-name counterpart's"). Under FDA rules, a generic drug manufacturer may not issue additional warnings through Dear Doctor letters nor imply in any way that there is a therapeutic difference between their product and the name-brand formulation. *Id.* at 2576 (adopting the FDA's argument that Dear Doctor letters

qualify as labeling and therefore must be consistent with the approved labeling. 21 C.F.R. § 202.1(I)(2) 21 C.F.R. § 201.100(d)(1)).

■ Given the broad definition of labeling and the prohibition against generic manufacturers unilaterally altering labels, any state law duty that requires a generic manufacturer to provide additional warnings directly conflicts with federal law. *Mensing* addressed generic manufacturers' duty to warn, and concluded that failure to warn claims brought under state law were preempted. 131 S.Ct. at 2576.

Plaintiffs encourage an extremely narrow reading of *Mensing.* They assert that *Mensing* did not preempt all state-law failure to warn claims against generic manufacturers; instead, plaintiffs argue that the sole issue before the *Mensing* court was whether a generic drug manufacturer could unilaterally change its label to differ from those of the name-brand drug. Here, plaintiffs argue that Oregon law does not require defendant to add warnings to its label, but rather only requires that a generic defendant provide adequate warnings. I fail to understand how defendant Pliva can satisfy Oregon's requirement to provide adequate warnings without changing the label, writing Dear Doctor letters, or otherwise violating the applicable federal regulations. Federal regulations governing generic drug manufacturers directly conflict with, and therefore preempt, state laws that hold generic manufacturers liable for inadequate warn-

---

**2.** Federal regulations define label and labeling broadly. The FDCA defines labeling as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m). Under the FDA's regulations "(*l* )abeling includes all written, printed, or graphic matter accompanying an article at any time while

such article is in interstate commerce or held for sale after shipment or delivery in interstate commerce...." 21 C.F.R. § 1.3(b). A label is "any display of written, printed, or graphic matter on the immediate container of any article, or any such matter affixed to any consumer commodity or affixed to or appearing upon a package containing any consumer commodity." *Id.*

ing labels on their products. *Mensing,* 131 S.Ct. at 2578.

Relying heavily on *Wyeth v. Levine,* 555 U.S. 555, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009), plaintiffs also argue that preemption does not apply to their state law product liability claims that are premised on the theory that a different label was necessary to make the drug reasonably safe. However, *Levine* is largely inapplicable here. There, the plaintiff sued the name-brand manufacturer on the basis of its inadequate label. Unlike a generic manufacturer, the name-brand manufacturer could alter the label or otherwise warn the health care community. *Levine,* 555 U.S. at 570–71, 129 S.Ct. 1187. Here, Pliva, the generic manufacturer, could not alter its label or communicate the necessary information to physicians without violating federal law.

Furthermore, most of the cases decided since *Mensing* have dismissed failure to warn claims brought against generic drug manufacturers on the basis of preemption. For example, in *Smith v. Wyeth, Inc.,* the plaintiffs argued that while *Mensing* altered the theories of liability a plaintiff could pursue, viable causes of action remained against generic drug defendants, 657 F.3d 420, 423 (6th Cir.2011), *petition for reh'g en banc denied.* The Sixth Circuit disagreed:

> [A]s in the present case, the plaintiffs in *Mensing* alleged that their long-term use of generic metoclopramide caused tardive dyskinesia, and they predicated the manufacturers' liability under state law on the failure to provide adequate warnings on the product's label. The Supreme Court held unequivocally, however, that federal law preempts state laws that impose on generic-drug manufacturers the duty to change a drug's label, thus barring the plaintiff's state-law tort claims. The plain language of

the *PLIVA* decision compels the same result here.

*Id.* Numerous other courts have acknowledged the preemptive effect *of Mensing, See e.g., Del Valle v. PLIVA, Inc.,* Case No. B; 11–113, 2011 WL 7168620 (S.D.Tex. Dec. 21, 2011) (magistrate judge's recommendation that all claims against a generic manufacturer defendants be dismissed with prejudice); *Moretti v. Wyeth, Inc., et al.,* Case No. 2:08–cv–00396–JCM–CWH (D.Nev. Dec. 6, 2011); *Stevens v. Pliva, Inc.,* No. 6:10–0886, 2011 WL 6224556 (W.D.La. Dec. 2, 2011); *Gross v. Pfizer, Inc.,* 825 F.Supp.2d 654 (D.Md. 2011).

Here, plaintiffs assert that Pliva failed to warn Mrs. Phelps, her doctors, and the medical community that long-term use of metoclopramide was likely to cause tardive dyskinesia. However, federal law prevented Pliva from adding additional warnings to its label or sending physicians Dear Doctor letters warning them of the risks, Pliva could not comply with Oregon law and federal law. Consequently, plaintiffs' claims are preempted.

Both the majority and the dissent in *Mensing* recognized the effect the ruling would have on future litigation against generic drug manufacturers. *See Mensing,* 131 S.Ct. at 2581 ("[B]ecause pharmacists, acting in full accord with state law, substituted generic metoclopramide instead, federal law pre-empts these lawsuits.... We acknowledge the unfortunate hand that federal drug regulation has dealt Mensing, Demahy, and others similarly situated.") (Thomas, J.); *id.* at 2592 ("[A] drug consumer's right to compensation for inadequate warnings now turns on the happenstance of whether her pharmacist filled her prescription with a brand-name drug or a generic. If a consumer takes a brand-name drug, she can sue the manufacturer for inadequate warnings under our opinion

in *Wyeth*. If, however, she takes a generic drug, as occurs 75 percent of the time, she now has no right to sue.")(Sotomayor, J. dissenting). Nonetheless, the law as it stands preempts plaintiffs claims. Any remedy to which plaintiffs are entitled must come from the legislature and not the courts.

### *3. Plaintiffs' other federal law claims fail.*

■ Plaintiffs also bring additional claims against Pliva for misbranding, failure to communicate drug safety information, and failure to test and monitor the effects of metoclopramide. All of the claims are matters of federal, not state, law. When enacting the FDCA, Congress was explicit that only the federal government may bring an action to enforce its provisions. *See* 21 U.S.C. § 337(a) (providing that proceedings for enforcement, or to restrain violations, of FDCA "shall be by and in the name of the United States"). Consequently, failure to comply with the FDCA cannot form the basis for a state-law claim. Plaintiffs cannot sue to enforce the federal statute.

Likewise, plaintiffs' failure to conduct post-marketing activities and failure-to-test claims cannot be stand-alone causes of action. Rather, they are a part of the failure to warn claim. *See Gross v. Pfizer, Inc.*, 825 F.Supp.2d 654, 659 (D.Md.2011) (finding that Pliva's failure to test and inspect its products "are but a piece of Plaintiff's larger failure to warn claims"); *Kociemba v. G.D. Searle & Co.*, 707 F.Supp. 1517, 1527 (D.Minn.1989) (noting that failure to test cannot cause injury and explaining that the claim is subsumed in a design defect or failure-to-warn claim).

Plaintiffs' reliance on *Hughes v. Boston Scientific Corp.*, 631 F.3d 762 (5th Cir. 2011) is misplaced. *Hughes* involved a medical device and whether the plaintiff's claims were expressly preempted under § 360k of the Medical Device Amendments. The court's holding in *Hughes* does not change the preemption analysis outlined in *Mensing*. Here, plaintiffs' claims are preempted by impossibility; they are not expressly preempted as the claims in *Hughes* were. Moreover, *Hughes* was decided before *Mensing*, and *Mensing* specifically held that a failure to provide information to the FDA or to request assistance in strengthening a name-brand drug's labeling, assuming such a duty existed, did not change its preemption analysis. *Mensing*, 131 S.Ct. at 2577–78. Accordingly, plaintiffs may not proceed on similar claims here.

### C. Plaintiffs' Claim Based on Pliva's Failure to Update the Label Will Not be Considered at this Stage of the Proceedings.

On November 22, 2011, plaintiffs filed their first amended complaint. They brought a negligence per se claim based on Pliva's failure to update its label to contain the new warnings added by the name-brand manufacturer in violation of federal regulations. Magistrate Judge Coffin denied Pliva's motion to dismiss with respect to the new claim. Similarly, Judge Coffin denied without prejudice plaintiffs' motion for summary judgment on the basis that defendants had not had an adequate chance to respond to the amended complaint.

Pliva argues that the failure to update claims are preempted under *Mensing* in their limited objections to the findings and recommendations. In contrast, plaintiffs argue that their motion for summary judgment should have been granted on their negligence per se claim. The issue is not properly before this court, as Pliva has filed a new motion for judgment on the pleadings. This court will not consider the

merits of the new allegations until Judge Coffin has fully reviewed them.

### D. Plaintiff's Motion for Sanctions is Denied.

Plaintiffs object to Judge Coffin's denial of their motion for sanctions against Pliva, based on Pliva's alleged failure to make required disclosures and to cooperate during discovery, A magistrate judge may hear and rule on certain pre-trial matters, including a motion for sanctions pursuant to 28 U.S.C. § 636(b)(1)(A). A district judge may reconsider a magistrate's order where it is clearly erroneous or contrary to law. *Id.;* Fed. R. Civ. Pro. 72(a); *Henry v. Gill Indust., Inc.,* 983 F.2d 943, 946 (9th Cir.1993) (stating that the "court's discretion will not be disturbed unless we have a definite and firm conviction that the court committed a clear error of judgment...."). I find no clear error in Judge Coffin's ruling.

Counsel is involved in multiple metoclopramide cases. While this case was stayed in January of 2011 pending the Supreme Court's decision in *Mensing,* counsel was actively litigating other metoclopramide cases. While reviewing discovery in another case in February of 2011, plaintiffs' counsel, Mr. Donahue, discovered copies of Pliva's metoclopramide product label that were requested but never produced in this litigation. The labels purportedly showed that Pliva failed to update its labeling in 2003 and 2004 to include changes made to the brand-name metoclopramide label. After making the discovery, Mr. Donahue contacted Pliva's counsel, Mr. Littrell, concerning the label discrepancies. On March 11, 2011, Mr. Littrell responded by sending a letter to "Metoclopramide Plaintiffs' counsel" (including Mr. Donahue) and to the Clerk of the United States Supreme Court informing counsel that Pliva's metoclopramide label had differed from the name-brand drug's label for over five years. The letter included production of Pliva package inserts.

Plaintiffs argue that Pliva violated Rule 26 by failing to produce copies of its metoclopramide labels for the time period between 2003 and 2008. Furthermore, plaintiffs assert that the failure to produce the labels severely prejudiced plaintiffs and request the striking of Pliva's preemption defense as a sanction. Judge Coffin properly denied plaintiffs' motion.

■ As Judge Coffin noted, Rule 26 requires the court to sanction an attorney or party who improperly certifies that disclosures are correct, complete and consistent with these rules. Fed.R.Civ.P. 26(g)(1) and (3). The record indicates that Pliva's counsel responded to plaintiffs' request for labeling and packaging inserts by stating that it would produce this evidence after a protective order was entered. Such a response does not indicate that the requested production was complete and plaintiffs did not object to the response. Neither Mr. Littrell nor Pliva improperly certified the discovery response. Consequently, Judge Coffin's finding is not erroneous or contrary to law.

■ Similarly, Judge Coffin did not error when denying sanctions under Rule 37(b). Rule 37(b) primarily permits sanctions for the failure of a witness to attend a deposition or failure of a party to make a witness available. Fed.R.Civ.P. 37(b). To prevail on a motion for sanctions under Rule 37(b), the movant must show that the nonmovant violated a discovery order and acted in bad faith. *Id.; see Lee v. Walters,* 172 F.R.D. 421, 425 (D.Or.1997). Pliva did not violate a discovery order and Judge Coffin found that there was no indication of bad faith in the record.

■ While Rule 37(d) does not require the violation of a discovery order or bad faith, it mandates that a motion for sanc-

tions include certification that the "movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the response without court action." Fed.R.Civ.P. 37(d)(1)(B). Following the issuance of the protective order, plaintiffs did not renew their request or contact Pliva regarding the labeling evidence until plaintiffs' counsel located the evidence in another case. There was no attempt to confer with Pliva. Once Pliva was informed of the labeling discovery, Pliva promptly sent a letter including the relevant package inserts to plaintiffs' counsel. Finally, Pliva's failure to produce the labeling evidence before discovery closed did not prejudice plaintiffs. After the discrepancies were discovered, plaintiffs were allowed to amend their complaint to include claims for failure to update. Thus, plaintiffs' motion for sanctions was properly denied.

### III. Conclusion

For the reasons explained above the Findings and Recommendations issued on November 23, 2011 and November 30, 2011 (docs. # 256 & 260) are ADOPTED. Plaintiffs' motion for relief from judgment (doc. # 233) is DENIED, defendant Northstar's motion for summary judgment (doc. # 190) is GRANTED, and Pliva's motion to dismiss (doc. # 188) is DENIED with respect to the failure to update claims and GRANTED in all other respects. Plaintiffs motion for partial summary judgment (doc. # 192) is DENIED. Plaintiffs motion for sanctions against Pliva (doc. # 271) is DENIED. Pliva's motion to strike plaintiffs' motion for sanctions (doc. # 279) is DENIED, and Pliva's motion to strike plaintiffs' notice of supplemental authority (doc. # 287) is DENIED. While this outcome may place plaintiffs in an unfortunate position, as they cannot recover for injuries allegedly caused by the ingestion of generic metoclopramide from

either name-brand or generic defendants, it is a result compelled by law.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

COFFIN, United States Magistrate Judge:

Plaintiffs bring tills action alleging that Betty Phelps was injured after ingesting generic pharmaceutical products produced by defendants Wyeth, Inc. (Wyeth), Schwarz Pharma, Inc. (Schwarz), Alaven Pharmaceutical LLC (Alaven), PLIVA USA, Inc. (Pliva) and Northstar Rx LLC (Northstar). On June 17, 2010 the court granted summary judgment to name-brand defendants, dismissing Wyeth. Schwarz, and Alaven. Currently before me is plaintiffs' September 19, 2011 motion for relief from that judgment (# 233), which name-brand defendants oppose (# 242). For the reasons below, I recommend that this Court deny plaintiffs' motion.

### *Legal Standard*

Federal Rule of Civil Procedure 60(b) sets forth the grounds upon which a motion for relief from an order or judgment may be made. Rule 60(b)(5) permits a party to obtain relief if "the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed.R.Civ.P. 60(b)(5). In general, motions for reconsideration should not be frequently made or freely granted. *Twentieth Century–Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir.1980). " '[T]he major grounds that justify reconsideration involve an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' " *Pyramid Lake Paiute Tribe*

*of Indians v. Hodel,* 882 F.2d 364, 369 n. 5 (9th Cir.1989) (quoting *U.S. v. Desert Gold Mining Co.,* 433 F.2d 713, 715 (9th Cir. 1970)).

### Background

Plaintiffs filed their original complaint on June 12, 2009 alleging that Betty Phelps was injured after ingesting generic pharmaceutical products produced by defendants. (# 1). In June 2010, the court granted summary judgment for name-brand defendants Wyeth, Schwartz, and Alaven and dismissed the claims against them, leaving this action to proceed against generic manufacturers Pliva and Northstar. (# s 80, 83). I stayed this case in January pending the United States Supreme Court's decision in *PLIVA, Inc. v. Mensing,* — U.S. —, —, 131 S.Ct. 2567, 2570, 180 L.Ed.2d 580 (2011) *reh'g denied,* — U.S. —, 132 S.Ct. 55, 180 L.Ed.2d 924 (2011). The Supreme Court decided *Mensing* on June 23, 2011, holding that federal law preempts state laws that impose a duty upon generic manufacturers, like Pliva and Northstar, to change the drug's label if the warning is inadequate. *Id.*

### Discussion

Plaintiffs assert that 1 must reconsider summary judgement for name-brand defendants due to the Supreme Court's decision in *Mensing.* Plaintiffs claim that *Mensing* overturns the law established in *Foster v. American Home Products Corporation,* 29 F.3d 165 (4th Cir.1994), which held that the manufacturer of a name-brand prescription drug could not be held liable far an injury resulting from a product made by the manufacturer of the generic version of the drug. They argue that the decision in *Foster* was based on the court's determination that the generic manufacturer is responsible for its own label and therefore its own inadequate warnings. Plaintiffs claim that the *Mens-*

*ing* decision, holding that the generic manufacturer cannot be held liable for a failure to warn, overturns the *Foster* ruling on the name-brand manufacturer's liability.

Defendants, the name-brand manufacturers, claim that summary judgment in this case was granted based on Oregon law stating that a manufacturer cannot be held liable unless plaintiff proves that her injuries resulted from the use of that manufacturer's product. Defendants assert that there were no federal-law issues relevant to name-brand defendants' motion for summary judgment, and none relevant to the Court's decision to grant that motion. In addition, defendants claim that *Mensing* leaves the *Foster,* ruling undisturbed and that even if it does affect *Foster, Mensing* undermines only the court's dicta, not its specific holding on the liability of name-brand manufacturers.

■ I find defendants' arguments persuasive. I based my recommendation for summary judgment on Oregon law stating that "a manufacturer cannot be held liable unless and until the plaintiff proves that her injuries resulted from use of that manufacturer's product." *McEwen v. Ortho Pharma. Corp.,* 270 Or. 375, 407, 528 P.2d 522 (1974). I also noted that plaintiffs "do not point to any Oregon authority allowing a name-brand manufacturer to be held liable for injuries caused by a generic competitor's product." (# 80 at p. 4, 528 P.2d 522). This is still the case today—plaintiffs argue that *Mensing* overturns *Foster,* which in turn compels me to reconsider my recommendation that this Court grant summary judgment, but they do not cite any Oregon law that allows a name-brand manufacturer to be held liable for injuries caused by a competitor's product.

■ In *Mensing,* the Supreme Court held that generic manufacturers could not be held liable for an inadequate warning label, so long as the label used was identi-

cal to the label created by the name-brand manufacturer. 131 S.Ct. at 2577–78. Under FDA regulations, generic manufacturers cannot change their warning labels independently; therefore, state laws requiring a generic drug manufacturer to independently change its label are preempted by such regulations. *Id.* By contrast, in *Foster,* the Fourth Circuit held that the name-brand manufacturer of a drug did not have a duty to the users of another manufacturer's product. 29 F.3d at 171. Thus, the name-brand manufacturer could not be held liable for negligent misrepresentation when the plaintiff was injured by the generic drug. *Id.*

The plaintiffs in *Foster* did claim that the name-brand manufacturer should be held liable under a theory that plaintiffs would be unable to recover from the generic manufacturer because it did not create the warning label used on the product. *Id.* at 169. The court did not find this persuasive. It made two separate determinations. *Id.* First, it rejected the idea that the generic manufacturer was not responsible for the adequacy of its own warning label. *Id.* Second, it rejected "the assertion that a name brand manufacturer's statements regarding its drug can serve as the basis for liability for injuries caused by another manufacturer's drug." *Id.* at 170. The court concluded: "In sum, the [plaintiffs] offer no authority for their assertion that one manufacturer can be held liable for injuries stemming from another manufacturer's product, and demonstrate no basis in the federal drug approval scheme for treating drug manufacturers differently from other manufacturers in products liability actions." *Id.* at 171.

Plaintiffs are correct in asserting that the *Foster* court's first determination has been abrogated by *Mensing.* However, that does not mean that the court's entire analysis of the name-brand manufacturer's liability is undermined. Whether or not

the generic manufacturer is able to independently change its label does not change the court's second determination, nor does it affect the ultimate conclusion. And the plaintiffs, like the Fosters, have offered no authority for their assertion that defendants can be held liable for injuries stemming from their generic competitors' products, nor have they demonstrated a basis for treating drug manufacturers differently from other manufacturers in products liability actions. Because plaintiffs have not set forth any basis for reconsideration of this Court's order granting summary judgment in favor of the name brand defendants and dismissing the claims against them, I recommend that this court deny plaintiffs' motion.

### *Conclusion*

For the reasons above, I recommend that this Court deny plaintiffs' Motion for Relief from Judgment.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

COFFIN, United States Magistrate Judge:

Plaintiffs bring this action alleging that Betty Phelps was injured after ingesting generic pharmaceutical products produced by defendants PLIVA USA, Inc. (Pliva) and Northstar Rx LLC (Northstar). I stayed this case pending the United States Supreme Court's decision in *PLIVA, Inc. et al. v. Mensing,* —— U.S. ——, ——, 131 S.Ct. 2567, 2570, 180 L.Ed.2d 580 (2011) *reh'g denied,* —— U.S. ——, 132 S.Ct. 55, 180 L.Ed.2d 924 (2011). The Supreme Court decided *Mensing* on June 23, 2011, holding that federal law preempts state laws that impose a duty upon generic manufacturers, like Pliva and Northstar, to change the drug's label. Following a July 8, 2011 status conference, the parties filed supplemental motions—Northstar filed a

motion for summary judgment, Pliva filed a motion to dismiss, and plaintiffs filed a motion for partial summary judgment. I heard oral arguments on these motions on September 15, 2011. In the minute order filed after the oral argument, I granted plaintiffs leave to file a motion to file an amended compliant. (# 232), On November 22, 2011, I granted plaintiffs' motion to file an amended complaint, and plaintiffs filed their first amended complaint on the same day.[1] (# s 254, 255).

### Background

The parties do not dispute the following facts. Metoclopramide is a prescription drug that is available in either generic or name-brand formulation. Reglan®, the brand name formulation, was produced at different times by defendants Wyeth, Schwarz, and Alaven. Pliva and Northstar, the only two defendants remaining in these proceedings, produced the generic formulation of metoclopramide.

Ms. Phelps took generic metoclopramide tablets from November 2002 through at least August 2009. She alleges that metoclopramide caused her to develop tardive dyskinesia, a debilitating neurological condition characterized by involuntary movements. She claims that the defendants, the generic manufacturers of metoclopramide, are liable for her injuries because they negligently failed to adequately warn her and her doctors about the risks associated with long-term use of metoclopramide.

### Legal Standard

Federal Rule of Civil Procedure 56 allows the granting of summary judgment:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). There must be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is missing. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has met its burden, the burden shifts to the nonmovant to produce specific evidence to establish a genuine issue of material fact or to establish the existence of all facts material to the claim. *Id.; see also, Bhan v. NME Hosp., Inc.*, 929 F.2d 1404, 1409 (9th Cir.1991); *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105 (9th Cir.2000). In order to meet this burden, the nonmovant "may not rely merely on allegations or denials in its own pleading," but must instead "set out specific facts showing a genuine issue of fact for trial." Fed. R.Civ.P. 56(e).

Summary judgment is appropriate when federal law preempts a plaintiff's state law claims. *See, e.g., Bank of Am. v. City & Cnty. of San Francisco*, 309 F.3d 551, 566 (9th Cir.2002) (affirming district court's decision to grant summary judgment based on federal conflict preemption). Similarly, when federal law preempts all claims in a complaint, dismissal for failure to state a claim is appropriate. *See, e.g., Whistler Invs., Inc. v. Depository Trust & Clearing Corp.*, 539 F.3d 1159, 1163 (9th

---

1. The First Amended Complaint includes a specific allegation that generic manufacturer Pliva failed to update its warning label for its metoclopramide product when the FDA approved revisions to the label for Reglan/meto- clopramide in 2003 and 2004, Otherwise, the claims in the First Amended Complaint remain the same as the claims in plaintiffs' original complaint.

**1132**

Cir.2008) (affirming dismissal of claim based on federal conflict preemption).

### Discussion

In their original complaint, plaintiffs asserted a variety of claims against the defendants: (1) negligence (Count One); (2) strict liability (Count Two); (3) breach of warranties (Count Three); (4) misrepresentation and fraud (Count Four); and (5) gross negligence (Count Five). Each of these claims is based on plaintiffs' argument that Pliva and Northstar failed to exercise reasonable care in the marketing of generic metoclopramide because they failed to adequately warn Ms. Phelps and her doctors about the dangers of the drug.

Plaintiffs' claims can be distilled down to a claim of product liability. Oregon's product liability statute provides that:

> 'product liability in a civil action' means a civil action brought against a manufacturer, distributor, seller or lessor of a product for damages for personal injury ... arising out of: (1) any design, inspection, testing, manufacturing or other defect in a product; (2) any failure to warn regarding a product; or (3) any failure to properly instruct in the use of a product.

ORS 30.900. Plaintiffs brought this action alleging Ms. Phelps' injury of tardive dyskinesia was caused by generic-brand manufacturer's inadequate warnings. Thus, this action falls within Oregon's definition of a product liability action.

Additionally, in their Supplemental Motion for Partial Summary Judgment plaintiffs seek summary judgment based on a theory of negligence per se, alleging that Pliva failed to comply with FDA regulations that require a generic manufacturer to update the warnings accompanying its drug products after changes are approved by the FDA for the corresponding brand-name drug. Plaintiffs claim that the FDA updated the warnings for Reglan®/metoclopramide in 2003 and 2004, and that Pliva failed to incorporate those changes for almost the entirety of the time Ms. Phelps consumed its drug. On November 22, 2011 plaintiffs filed their First Amended Complaint reflecting this claim.

### Defendant Northstar's Motion for Summary Judgment

Defendant Northstar asserts that all of plaintiffs' claims against it are preempted by federal law. However, reaching this conclusion is unnecessary because the undisputed facts show that Ms. Phelps was diagnosed with tardive dyskinesia before she began ingesting Northstar's generic brand of metoclopramide. Well established Oregon law states that a manufacturer cannot be held liable unless and until the plaintiff proves that her injuries resulted from use of that manufacturer's product. *McEwen v. Ortho Pharma., Corp.*, 270 Or. 375, 407, 528 P.2d 522 (1974) (discussing in a failure to warn case whether each defendants' negligence could be found to be a substantial cause of plaintiff's ingestion of the oral contraceptive manufactured by that defendant). "[N]egligence and strict products liability [claims] require the plaintiff prove a causal connection between the alleged negligence or defective product and the injuries sustained by the plaintiff." *Glover v. BIC Corp.*, 6 F.3d 1318, 1327 (9th Cir.1993). Plaintiffs have failed to show that Northstar's product substantially caused Ms. Phelps' condition. Therefore, I recommend that this court grant Northstar's motion for summary judgment.

### Defendant Pliva's Motion to Dismiss

Like Northstar, defendant Pliva asserts that all of plaintiffs' claims against it are preempted by federal law. When federal law preempts all claims in a complaint, dismissal for failure to state a claim is appropriate. *See, e.g., Whistler Investments, Inc. v. Depository Trust & Clear-*

*ing Corp.,* 539 F.3d 1159, 1163 (9th Cir. 2008) (affirming dismissal of claim based on federal conflict preemption).

The Supremacy Clause establishes that federal law "shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2. "Where state and federal law directly conflict, state law must give way." *Mensing,* 131 S.Ct. at 2570. State and federal law conflict where it is "impossible for a private party to comply with both state and federal requirements." *Id.* (citing *4 Freightliner Corp. v. Myrick,* 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995)).

■■■■ Federal regulations applicable to generic drug manufacturers directly conflict with, and thus preempt, state laws that hold generic drug manufacturers liable for inadequate warning labels on their products. *Mensing,* 131 S.Ct. at 2578. Under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq., a manufacturer seeking federal approval to market a new drug must prove that it is safe and effective and that the proposed label is accurate and adequate. 21 U.S.C. § 355(b)(1). By contrast, under the Drug Price Competition and Patent Term Restoration Act, known as the Hatch–Waxman Amendments, generic drug formulations can gain FDA approval by showing bioequivalence to a reference-listed drug that has already been approved by the FDA. 21 U.S.C. § 355(j)(2)(A). A generic drug application must also show that "the labeling proposed for the new drug is the same as the labeling approved for the listed drug." 21 U.S.C. § 355(j)(2)(A)(v). Therefore, rather than a duty to warn, "generic manufacturers have an ongoing federal duty of sameness" regarding their warning labels. *Mensing,* 131 S.Ct. at 2574. Under the same rules, generic drug manufacturers may not issue additional warnings through Dear Doctor letters, nor may they imply in any way that there is a therapeutic difference between their product and the name-brand drug. *Id.* at 2576.

In *Mensing,* the plaintiffs' claims were based on state laws that required a drug manufacturer that "is or should be aware of its product's danger to label that product in a way that renders it reasonably safe." *Id.* at 2573, 2577. In those states, the duty to warn fell specifically on the manufacturer, brand-name and generic alike. *Id.* at 2577. "Thus it was impossible for the Manufacturers to comply with both their state-law duty to change the label and their federal law duty to keep the label the same." *Id.* at 2578.

Similarly, in this case, plaintiffs' claims are based on an Oregon product liability law that provides for civil liability for "any failure to warn regarding a product." ORS 30.900, Essentially, plaintiffs assert that Pliva failed to adequately warn Ms. Phelps, her doctors, and the medical community in general that its product was dangerous and that long-term use could cause tardive dyskinesia. However, as discussed, the Supreme Court has held that all warnings-based claims against generic drug manufacturers are preempted by federal regulations—Pliva was not allowed to change its warning label, nor was it allowed to issue Dear Doctor letters to Ms. Phelps' physicians or the medical community in general. Therefore, all of plaintiffs' claims are preempted except for the recently added claim for failure to update the warning label in 2003 and 2004, and, except for that claim, defendant Pliva's motion to dismiss should be granted.

### Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs claim that they are entitled to summary judgment on three theories of defendants' negligence: (1) Pliva was negligent as a matter of law in failing to

include FDA-approved warning information in its label for metoclopramide; (2) Pliva was negligent as a matter of law in failing to monitor the safety of its drug; and (3) Pliva and Northstar were negligent as a matter of law for failing to provide any warning to the medical community regarding their metoclopramide products.

Plaintiffs' first theory rests on the claim that Pliva failed to, include changes to its warning label that were approved in 2003 and 2004, which would be a violation of FDA regulations' "ongoing duty of sameness" as explained above. This may be a viable claim of negligence per se;[2] however, plaintiffs did not specifically allege this claim until November 22, 2011 when they filed their First Amended Complaint. Accordingly, Pliva has not had an adequate opportunity to respond to this claim, and summary judgment is not appropriate at this time. Thus, I recommend that this court deny plaintiffs' motion for summary judgment on this basis without prejudice.

FDA regulations preempt plaintiffs' second and third theories of liability. In support of the second theory, in which Pliva allegedly "failed to monitor the safety of its drug," plaintiffs claim that "the *Mensing* decision indicated that generic manufacturers are required to monitor the safety of their drug products once they enter the marketplace, and that federal law requires them to take certain action when it has concerns regarding the safety of its drug." In actuality, the Court assumed for the sake of argument that generic manufacturers have a duty to monitor their products and then petition the FDA to approve a stronger warning label if necessary, but the majority ultimately did not resolve the issue because it found preemption even assuming such a duty existed. *Mensing*, 131 S.Ct. at 2577. The Court reasoned that if a generic manufacturer can not "independently accomplish[ ] what state law requires," without relying on actions by the FDA, "it has established preemption." *Id.* at 2580. Likewise, here, even if Pliva had a duty to monitor its generic drug products, Pliva would still have had to petition the FDA and wait for the agency's approval before Pliva could change its labels.

Plaintiffs' third theory, as it relates to Pliva, rests on the same warnings-based claims that are preempted by FDA regulations, as identified in *Mensing* and discussed above. Plaintiffs' allege that Pliva "failed to provide any warning to the medical community regarding [its] metoclopramide products." However, as Pliva was not allowed to change its warning labels, nor was it allowed to issue Dear Doctor letters, Pliva's state-law duty to warn is preempted by federal regulations. Therefore, I recommend that this court deny plaintiffs' motion for summary judgment against Pliva.

Finally, as noted above, plaintiffs have not established that Northstar's metoclopramide product was the proximate cause of Ms. Phelps' injuries. Thus, I recommend that this court deny plaintiffs' motion for summary judgment against Northstar.

---

**2.** Oregon courts have held that "violations of statutory safety rules by themselves provide the element of negligence with respect to those risks that the rules are meant to prevent, at least unless the violator shows that his conduct in fact did not violate the rule under the circumstances." *Axen v. Am. Home Products Corp.*, 158 Or.App. 292, 306–07, 974 P.2d 224 *opinion adhered to as modified on* *reconsideration*, 160 Or.App. 19, 981 P.2d 340 (1999). *But see In re Trasylol Products Liab. Litig.*, 763 F.Supp.2d 1312, 1330 (S.D.Fla. 2010) (disagreeing, and holding that "the FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with its provisions.")

### Conclusion

I recommend that this court grant defendant Northstar's motion for summary judgment, (# 190). I recommend that this court grant defendant Pliva's motion to dismiss (# 188) based on federal preemption. I recommend that this court deny plaintiffs' motion for partial summary judgment (# 192) based on its assertions that Pliva was negligent for failing to monitor the safety of its drug and that Pliva and Northstar were negligent for failing to warn the medical community about their metoclopramide products. I recommend that plaintiffs' motion for summary judgment based on its claim that Pliva was negligent for failing to include the 2003 and 2004 updates to its warning labels be denied without prejudice.

If my Findings and Recommendations are adopted, this case will proceed on plaintiffs' claim against Pliva for its failure to update its warning labels in 2003 and 2004.

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days after the date this order is filed. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991). If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.